THE STATE OF OHIO, APPELLEE, *v.* HEINRICHS, APPELLANT.

64

(No. 1190—Decided March 1, 1988.)

*Jonathan P. Hein,* assistant prosecuting attorney, for appellee.

*Larry J. Denny,* for appellant.

FAIN, J. Defendant-appellant, Herbert L. Heinrichs, appeals from his conviction and sentence for DWI. Heinrichs argues that the arresting officer had insufficient cause to stop him; thus, his motion to suppress should have been granted. We agree. Because it is clear from the record that all of the evidence against Heinrichs resulted from the arresting officer's stop, Heinrichs' conviction is reversed and he is ordered discharged.

I

Sheriff's Deputy William E. Grice was conducting a routine patrol of the Greenville Country Club ("country club") at about 1:00 a.m. on July 29, 1986. Although he was aware of "alarm drops" that had been registered from the country club in the past, and was concerned about possible theft and vandalism, he had no more concern about the possibility of theft and vandalism occurring at the country club that particular night than elsewhere on his beat.

When Deputy Grice was about one hundred feet inside the entrance to the country club access drive he noticed a car coming towards him in the opposite direction. This was the car driven by Heinrichs. Deputy Grice noticed that the car coming towards him had Champaign County license plates. Deputy Grice turned on his flashing lights, effecting a stop of Heinrichs' vehicle.

After both vehicles came to a stop alongside each other, Deputy Grice rolled down his window and asked Heinrichs if there were any vehicles back at the country club. At this time, Deputy Grice could not observe more than just the roof of the country club, did not know if the country club was closed or open, and would not have known if there had been as many as one hundred cars parked at the country club.

Heinrichs' response to the deputy's inquiry was, "How in the fuck should I know." Deputy Grice then asked Heinrichs, "Didn't you just come from back there?" To this question Heinrichs answered, "Hell, I don't know."

The incongruity of Heinrichs' evasive and profane answers contrasted with his well-dressed appearance and nice-looking vehicle led the deputy to park his cruiser, walk back to Heinrichs' vehicle, and ask to see his license. Deputy Grice had to move his cruiser because at the point of the initial stop he was too close to Heinrichs' vehicle to open his door.

When Grice walked up to Heinrichs' car and approached within a foot of Heinrichs, he detected a strong odor of an alcoholic beverage. Deputy Grice asked Heinrichs if he had been drinking, to which Heinrichs answered that he "had had a couple of drinks." At this point, Deputy Grice asked Heinrichs to exit his vehicle to take a field sobriety test.

What happened next was beyond the scope of the suppression hearing, and cannot be determined from the record. Ultimately, however, Heinrichs was charged with violating R.C. 4511.19(A)(1), the DWI statute. Heinrichs moved to suppress all of the evidence obtained as a result of the stop of his vehicle on the grounds that the stop violated his rights under the search and seizure provisions of the federal and state Constitutions. After a hearing, the trial court denied Heinrichs' motion to suppress.

Following the denial of his motion to suppress, Heinrichs pled no contest,

was found guilty, and was sentenced accordingly. From his conviction and sentence, Heinrichs appeals.

## II

Heinrichs' sole assignment of error is as follows:

"The trial court erred in overruling appellant's motion to suppress evidence, thereby violating appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14, of the Ohio Constitution."

Heinrichs' motion to suppress was based on the investigative stop of his vehicle. We find it unnecessary, in view of our disposition of his assignment of error, to determine whether Deputy Grice had sufficient probable cause to arrest Heinrichs on suspicion of DWI. We are concerned solely with the question of whether Deputy Grice had sufficient cause to make the initial stop.

A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution. *Delaware* v. *Prouse* (1979), 440 U.S. 648, 653. At the very least, such justification requires that the stopping officer have " 'specific and articulable facts' " indicating that the stop is reasonable. *State* v. *Chatton* (1984), 11 Ohio St. 3d 59, 61, 11 OBR 250, 251, 463 N.E. 2d 1237, 1239.

In the case before us, it is clear from the record that Deputy Grice intended to, and did, effect an investigative stop of the vehicle being driven by Heinrichs when the deputy turned on his flashing overhead lights as Heinrichs was approaching him on the access drive. While a different case might be presented where a law enforcement officer stops a person for a non-investigative purpose, *e.g.*, simply to ask for directions, in this case it is clear that Deputy Grice's reason for stopping Heinrichs was investigative.

The issue before us is whether, at the time that Deputy Grice turned on his overhead flashing lights to effect the investigative stop of Heinrichs, he had specific and articulable facts sufficient to justify the stop.

Although Deputy Grice testified that at the time he made the stop he was concerned about possible theft or vandalism, he admitted that he had no greater concern about the possibility of theft or vandalism occurring at the country club than he had about the possibility of theft or vandalism occurring anywhere else on his beat. Thus, his concern about the possibility of theft or vandalism cannot be said to have been specific with respect to the country club or to Heinrichs.

We have held that an anonymous tip that someone had thrown beer cans at the informant's vehicle from " 'an old, green Chevy station wagon' " was insufficient, without more, to justify an investigative stop of a green Chevrolet stationwagon in the same general area thirty minutes later. *Beavercreek* v. *Stein* (July 2, 1984), Greene App. No. 84-CA-8, unreported. Similarly, we have held that an anonymous tip that there was a maroon Chevrolet Nova parked in a specific location, in which the occupants were in possession of a sawed-off shotgun, was insufficient to justify police officers in ordering the occupants of a maroon Chevrolet Nova, parked at the reported location, to exit the vehicle, even when combined with the fact that the officers were at that time at that location independently to make contact with a suspect in a burglary investigation. *State* v. *Damron* (Feb. 20, 1985), Montgomery App. No. 8703, unreported.

In *State* v. *Sharp* (Oct. 2, 1986), Montgomery App. No. 9630, unreported, we held that there was an insufficient basis for an investigative

stop when a police officer, at approximately 4:30 a.m., had been told by two newspaper route drivers that they had observed a green car that made them concerned about the safety of their newspaper carriers, even though they had observed no unlawful activity. The police officer based her stop of a green car, shortly thereafter, upon the suspicions generated by the comments from the newspaper route drivers and upon her belief that any traffic in that area at that hour was unusual. In *State* v. *Sharp, supra,* at 5-6, we stated:

"With particular concern about the initial stop of Sharp's vehicle, we have again examined the evidence to find that he was detained solely because he was driving a green car at 4:30 a.m. which might have been cruising in the neighborhood earlier. Was this general information, which depicts a scene reproduced almost daily in most towns and cities, sufficient to justify the stopping of the vehicle for further investigation of criminal activity?

"Percentagewise, stops or arrests at 4:30 a.m. in residential neighborhoods would probably ferret out many crimes, but in the absence of anything more specific, investigative stops based primarily upon the time of day or night would eventually do violence to the right of every individual to be free from unreasonable restraint or interference. And while it is always tempting to focus on end results when a mere hunch proves correct and guilt is established, the continuing vitality of the freedoms enjoyed by all citizens nonetheless depends upon reasonable adherence to basic procedural restrictions. Here, something more was required in the way of 'specific and articulable facts' to justify the detention, and accordingly, the alleged error is well made."

In this case, as in *State* v. *Sharp,* it would be tempting to focus on the evidence of guilt harvested by the investigative stop. As in *Sharp,* however, an otherwise unlawful investigative stop cannot be justified with reference to the quantity or quality of the evidence of guilt resulting therefrom.

We hold that there were insufficient specific and articulable facts to justify the investigative stop of the automobile being driven by Heinrichs.

Heinrichs' sole assignment of error is sustained.

### III

Heinrichs' sole assignment of error having been sustained, and it being clear from the record that all of the evidence against Heinrichs was obtained as a result of the unlawful investigative stop, Heinrichs' conviction and sentence are reversed, and he is ordered discharged.

*Judgment reversed*
*and defendant*
*discharged.*

BROGAN and WOLFF, JJ., concur.