OPINION
Defendant-appellant Adam E. Rister appeals the September 19, 2001 Judgment Entry of the Fairfield County Court of Common Pleas which overruled his motion to suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On May 20, 2001, at 2:00 a.m., Steven Poston, a resident of the Colonial Estates Trailer Park in Lancaster, Ohio, phoned the Fairfield County Sheriff's Office 911 line. Mr. Poston had noticed a U-Haul truck parked in his neighbor's driveway, across the street from his residence. Mr. Poston heard noises and thought it was suspicious for a truck to be parked there because his neighbor was rarely there, and the cargo area of the U-haul was facing the ASK Suzuki/Kawasaki Dealership abutting the trailer park.
The 911 tape was played for the court. Mr. Poston told the dispatcher that on one occasion other people had stolen merchandise from the Suzuki/Kawasaki Dealership using a U-Haul in a similar fashion. Mr. Poston told the dispatcher his address, but did not volunteer his name. The 911 dispatcher did not ask for Mr. Poston's name, but did ask Mr. Poston to call back if he should see the truck leaving.
Mr. Poston called the dispatcher back to inform her that the U-Haul was leaving the Colonial Estates Trailer Park. During this call, the dispatcher told Mr. Poston a sheriff's unit on route to the location had seen the truck.
Deputy Greg Storts was dispatched to the area at 2:20 a.m. Deputy Storts testified he was responding to a possible burglary in progress. The dispatcher told Deputy Storts a caller saw a vehicle backed up to the ASK Kawasaki/Suzuki dealership fence and the caller believed someone was stealing something. As Deputy Storts arrived at the trailer park, he was advised by dispatch the U-Haul vehicle was leaving. Seconds later, Deputy Storts saw a U-Haul vehicle leaving the trailer park, and turn North on Rt. 33. Deputy Storts and his partner, Deputy Ebersbach, followed the vehicle until it pulled into a gas station.
The vehicle pulled up to a gas pump. Before the vehicle came to a complete stop, Deputy Storts activated his lights and "performed a traffic stop." Tr. at 26. The deputies drew their weapons and ordered the occupants of the U-Haul to exit the vehicle. Three people exited the vehicle, including appellant. The deputies handcuffed appellant and the two other suspects. After determining there were no other suspects in the front of the vehicle, the deputies checked the cargo area to be certain there was no one in the back. A videotape of the stop was played for the trial court and made part of this record.
The video indicates the deputies, after securing the three suspects, again drew their weapons and opened the U-Haul cargo door approximately 1/3 of the way open. The deputies used flashlights to look inside to make sure there were no other individuals in the cargo area. As the door was opened, the deputies could see two large ATVs and one small ATV. Thereafter, the deputies mirandized all three individuals and placed them under arrest for suspicion of burglary.
Shortly after seeing the ATVs in the back of the U-Haul truck, Deputies Storts and Ebersbach received a dispatch indicating the fence at the ASK Kawasaki/Suzuki dealership had been cut. The dispatch further noted large, cut up boxes, which had once housed ATV's, were also found close to the fence.
Deputy Storts impounded the truck because he suspected its use in the commission of a crime. Deputy Storts was aware there had been numerous other thefts of ATVs, motorcycles, and other property from the ASK dealership. Further, Deputy Storts noted he had a heightened suspicion whenever a U-Haul truck was parked close to the ASK fence late at night. Deputy Storts was certain ASK was not open between midnight and 8:00 a.m., and he testified he had never known people to be working there at 2:00 a.m. The deputy testified he checked the area practically every time he was in the sector, almost every night he worked.
After placing the suspects under arrest, the deputies conducted a more thorough search of the U-Haul. In addition to the three ATVs, the deputies seized a pair of Craftsman side-cuts, a wooden-handled hammer, a pair of brown jersey gloves, and a pair of brown beaded gloves. The officers conducted this search at the scene without a warrant. However, the deputies eventually did obtain a warrant to search the U-Haul, after they towed the vehicle from the gas station.
Det. John Baumgardt of the Fairfield County Sheriff's Office was able to match the vehicle identification number from one of the ATVs in the U-Haul with the vehicle identification number printed on the cover of an empty crate discovered at the ASK dealership.
On May 25, 2001, the Fairfield County Grand Jury indicted appellant with three counts of theft of a motor vehicle, in violation of R.C.2913.02; two counts of possession of criminal tools, in violation of R.C. 2923.24; one count of complicity to commit breaking and entering, in violation of R.C. 2903.03 and 2911.13; and three counts of receiving stolen property, in violation of R.C. 2913.51.
On July 17, 2001, appellant filed a Motion to Suppress, alleging any evidence obtained was the result of an unlawful investigative stop, an unlawful and warrantless arrest, an unlawful and warrantless search of the U-Haul, and appellant's unlawful custodial interrogation. The trial court conducted a hearing on the motion to suppress on September 17, 2001. Mr. Poston, Deputy Storts, Sgt. Jarrod Collins, and Det. Baumgardt testified on behalf of the State. In a September 19, 2001 Judgment Entry, the trial court overruled appellant's motion to suppress.
On December 10, 2001, appellant withdrew his previously entered pleas of not guilty and plead no contest to three counts of theft of a motor vehicle, in violation of R.C. 2913.02, and one count of complicity to commit breaking and entering, in violation of R.C. 2903.03 and 2911.13. In a December 13, 2001 Judgment Entry, the trial court found appellant guilty of each of these counts, and dismissed the remaining counts contained in the indictment.
The trial court sentenced appellant to six months in jail on each of the four counts and ordered each of the six month sentences to be served concurrently. Additionally, the trial court placed appellant on community control for a period of three years. It is from this judgment entry appellant prosecutes this appeal, assigning the following errors for our review:
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED BY LAW ENFORCEMENT AS A RESULT OF AN UNLAWFUL INVESTIGATIVE STOP OF APPELLANT'S MOTOR VEHICLE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.
 II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED BY LAW ENFORCEMENT AS A RESULT OF APPELLANT'S WARRANTLESS AND UNLAWFUL ARREST IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED BY LAW ENFORCEMENT AS A RESULT OF LAW ENFORCEMENT'S WARRANTLESS AND UNLAWFUL SEARCH OF APPELLANT'S MOTOR VEHICLE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.
 I, III
In appellant's first assignment of error, he maintains the trial court erred in overruling his motion to suppress because the evidence flowed from an unlawful investigative stop of appellant's motor vehicle in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and Section 14, Article I of the Ohio Constitution. In appellant's third assignment of error, he contends the evidence should have been suppressed due to the warrantless and unlawful search of appellant's motor vehicle. Because these assignments of error are intertwined, we review them together. We disagree with each of appellant's contentions and address them in turn.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and Statev. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
In his first assignment of error, appellant argues the deputies had no reasonable basis to detain him. We disagree.
The Fourth Amendment to the United States Constitution provides, in pertinent part, "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated." Section 14 Article I of the Ohio Constitution also guarantees the right of the people to be free from unreasonable searches and seizures. Accordingly, the government is prohibited from subjecting individuals to unreasonable searches and seizures. Delaware v. Pruse (1979),440 U.S. 648.
A police stop of a motor vehicle is a significant intrusion and requires a justification as a "seizure" within the meaning of the Fourth
and Fourteenth Amendments of the United States Constitution. State v.Hendrichs (1988), 46 Ohio App.3d 63, 65. A police officer may briefly detain an individual while he investigates the suspicious behavior which gave rise to the stop. Terry v. Ohio (1968), 392 U.S. 1. A reviewing court, when determining whether a stop of a motor vehicle was proper, must consider the totality of the circumstances. State v. Anderson
(1995), 100 Ohio App.3d 688, 692. To justify an investigatory detention, a law enforcement officer must "demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity." State v. Correa (1995), 108 Ohio App.3d 362, 366. See, Terry, supra.
When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988),488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252; State v. Freeman (1980),64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus, cert. denied (1981), 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94. At a suppression hearing, the evaluation of the evidence and credibility of witnesses are issues for the trier of fact. State v. Smith (1991),61 Ohio St.3d 284, 288, 574 N.E.2d 510, cert. denied (1992), 502 U.S. 110.
 * * * `[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. United States v. Sokolow (1989), 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1. The officer must be able to articulate more than an `inchoate and unparticularized suspicion or "hunch"' of criminal activity.
 Terry at 27, citing Wardlow at 675-676.
If a law enforcement officer has probable cause to believe that a vehicle contains contraband, he may search a validly stopped motor vehicle based on the automobile exception to the warrant requirement.Maryland v. Dyson (1999), 527 U.S. 465, 466.
The law on probable cause has developed from the United States Supreme Court's holding in Illinois v. Gates (1983), 462 U.S. 213. Probable cause to arrest is not synonymous to probable cause for search. Arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. State v. Timson (1974), 38 Ohio St.2d 122. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminals and location. Katz, Ohio Arrest, Search and Seizure (1995), 77-81, Section T. 3.05(A), (B) and (C).
In general, the exclusionary rule excludes evidence procured in the course of an unconstitutional stop or arrest. Stow v. Riggenbach
(1994), 97 Ohio App.3d 661, 663. However, "[i]llegally obtained evidence is properly admitted * * * once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. The prosecution will have the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct."State v. Perkins (1985), 18 Ohio St.3d 193, 196 480 N.E.2d 763.We find Deputies Storts and Ebersbach had a reasonable, articulable suspicion to stop and/or institute an investigatory detention of the U-Haul vehicle. As noted above, the dispatcher had reported a burglary was in progress and described the U-Haul vehicle. While on route to the potential crime scene at 2:00 a.m., the Deputies saw a vehicle matching the description of the suspect vehicle exiting the trailer park. The deputies followed the vehicle until it stopped at a gas station.
We have reviewed the videotape and find it impossible to determine whether the vehicle was stopped at the gas station before the officers activated their overhead lights, signaling the U-Haul to stop. While it appears the vehicle was still in motion, we find it reasonable to conclude the vehicle, for all intents and purposes, had already come to a stop at the gas pump. We find the facts, as noted above, constituted a reasonable, articulable suspicion for the deputies investigatory detention of appellant.
In a continuing protective sweep for officer safety, the officers opened the rear of the U-Haul to make sure no other individuals were in the cargo compartment. Our review of the videotape confirmed the officers opened the cargo door only as far as was necessary to determine if other individuals were present. However, it is also clear from the videotape that even this slight opening revealed the presence of large ATV vehicles in the back of the U-Haul.
Before the deputies conducted any search of the vehicle, they were informed by other officers that the fence at the ASK dealership had been cut. We find this information, in conjunction with the plain view of the ATVs, gave the officers probable cause to search the vehicle under the automobile exception.
Assuming, arguendo, the arrest of appellant was unlawful, we find the fact the officers saw the vehicle coming from the Colonial Estates Trailer Park combined with independent information that the fence of the ASK had been cut, would have provided probable cause to search the vehicle under the automobile exception. Therefore, the evidence would have been inevitably discovered by the authorities.
Accordingly, appellant's first and third assignments of error are overruled.
 II
In light of our disposition of appellant's first and third assignments of error, we find appellant's second assignment of error to be moot.
The December 13, 2001 Judgment Entry of the Fairfield County Court of Common Pleas is affirmed.
By: HOFFMAN, P.J. WISE, J. and EDWARDS, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the December 13, 2001 Judgment Entry of the Fairfield County Court of Common Pleas is affirmed. Costs assessed to appellant.