OPINION
{¶ 1} After pleading no contest to the charge of possession of crack cocaine, Jones appeals from his conviction of guilty, asserting as the only assigned error the court's decision denying his motion to suppress evidence, arguing that the cocaine was obtained unlawfully.
 {¶ 2} The facts of this matter and the decision of the trial court are set forth in the opinion of the court, as follows:
 {¶ 3} "This matter came on to be heard on a Motion to Suppress filed by the Defendant herein. The Defendant asks to suppress both the physical evidence and any statements that he made at the time of his stop and arrest.
 {¶ 4} "Dayton Police Officer Ryan Halburnt was on routine patrol at 11:20 a.m. when he pulled into the Northern Hills Car Wash on Gettysburg. The officer said he regularly checked the car wash because of the violent crime and drug offenses that took place there. It was raining and the officer observed the Defendant sitting in the gray Cadillac at the rear of the car wash. As he approached the Defendant's vehicle he observed the Defendant quickly close the lid to the console between the seats. He also observed him place a plastic bag with what appeared to be marijuana in a pocket. As the Defendant got out of his car to talk to the officer, the officer could smell an odor of burnt marijuana. The Defendant was patted down and the bag of marijuana was retrieved by the officer. The Defendant was placed in the rear seat of the police cruiser while the officer searched the drivers seat area and the console of the Defendant's car. The officer found what appeared to be crack cocaine in the console. A field test indicated positive for crack cocaine. The Defendant was placed under arrest, Mirandized, and waived his rights. An inventory search of the car was conducted prior to it being towed.
 {¶ 5} "The Court finds from the evidence and testimony that the marijuana was observed in plain view and that coupled with the odor of marijuana gave Officer Halburnt probable cause to conduct a pat down search of the Defendant. Once the officer found the marijuana and his observation of the Defendant quickly slamming the lid to the console he had probable cause to conduct a limited search of defendant's motor vehicle. See U.S. v. Ross,456 U.S. 798 (1982). Defendant's Motion to Suppress is therefore denied.
 {¶ 6} "SO ORDERED."
 {¶ 7} Although not stated in the above decision, it is undisputed that when the officer pulled into the parking lot of the car wash, he pulled his vehicle in front of the parked car and testified at the suppression hearing that at that point the parked car was not free to leave. Supp. Hrg. Tr., 14.
 {¶ 8} We find no problems with the action of the officer following the stop and detention of the parked vehicle, but, after reviewing the entire record de novo, as we are required to do, particularly as to a question of reasonable suspicion of probable cause, Ornelas v. U.S. (1996), 517 U.S. 690, we find no reason other than a possible hunch for the officer to have pulled in and blocked the exit of the parked vehicle before he determined that there was any suspicious activity going on.
 {¶ 9} The Seventh District Court of Appeals reviewed a similar situation in State v. Klein (1991), 73 Ohio App.3d 486, when it reversed the trial court's decision overruling a motion to suppress following the detention of a vehicle in holding that even though it took place after midnight, the officer lacked reasonable suspicion to warrant the investigative stop. The court in Klein quoted from this court's decision in State v. Sharp
(Oct. 2, 1986), Montgomery App. No. 9630, unreported, as follows:
 {¶ 10} "Percentagewise, stops or arrests at 4:30 a.m. in residential neighborhoods would probably ferret out many crimes, but in the absence of anything more specific, investigative stops based primarily upon the time of day or night would eventually do violence to the right of every individual to be free from unreasonable restraint or interference. And while it is always tempting to focus on end results when a mere hunch proves correct and guilt is established, the continuing vitality of the freedoms enjoyed by all citizens nonetheless depends upon reasonable adherence to basic procedural restrictions. Here, something more was required in the way of `specific and articulable facts' to justify the detention, and accordingly, the alleged error is well made. See, also, State v. Heinrichs (1988), 46 Ohio App.3d 63
[545 N.E.2d 1304]."
 {¶ 11} Therefore, we sustain the assignment of error and reverse and remand for any further proceedings that the State can mount without the evidence that was illegally seized.
Wolff, J. and Fain, J., concur.