OPINION
{¶ 1} In this accelerated calendar case, appellant, the state of Ohio, appeals the judgment entered by the Willoughby Municipal Court. The trial court granted a motion to suppress evidence filed by appellee, Todd Korman.
 {¶ 2} During the early morning hours of January 1, 2004, Korman was operating his vehicle in Kirtland Hills. Korman was stopped by Officer Ken Mescall of the Kirtland Hills Police Department.
 {¶ 3} As a result of the traffic stop, Korman was charged with driving under the influence of alcohol, in violation of R.C.4511.19(A), and "continuous lane of travel," in violation of Kirtland Hills Ordinance Section 331.08. Korman pled not guilty to these charges. Thereafter, Korman filed a motion to suppress the evidence resulting from his arrest.
 {¶ 4} The municipal court held a hearing on Korman's motion to suppress. Officer Mescall and Jean Korman, Korman's wife, testified at the hearing. Officer Mescall testified that he was on duty at 1:30 a.m. on January 1, 2004. At that time, Officer Mescall was assisting a fellow officer with a traffic stop on Little Mountain Road, in Lake County, Ohio. Officer Mescall testified that, as he assisted with the traffic stop, Korman's vehicle traveled toward the traffic stop and passed him with high-beam headlights on. As a result, Officer Mescall followed Korman's vehicle in his patrol car.
 {¶ 5} Officer Mescall testified that as he followed Korman's vehicle, he activated his patrol car's dashboard video camera. Korman turned left onto Baldwin Road, and Officer Mescall followed. Officer Mescall stated that he witnessed Korman's vehicle cross the white edge line, on the right-hand side of the road, by approximately twelve inches. A second or two later, Officer Mescall witnessed Korman's vehicle cross the double-yellow line, in the middle of the road, by approximately eight to twelve inches. Officer Mescall testified that Korman's crossing of the edge line and the centerline resulted in a traffic violation and, therefore, he initiated a traffic stop.
 {¶ 6} Officer Mescall testified that he followed Korman's vehicle for approximately one and one half miles before initiating the traffic stop. Officer Mescall noted that Korman's vehicle was traveling at the posted speed limit of twenty-five miles per hour. Baldwin Road was described as a narrow, unlit, two-lane road. Portions of Baldwin Road include sloping hills and curves. Officer Mescall testified that Korman navigated the slopes and curves without difficulty, and that Korman's crossing of the white edge line and solid-yellow line were the only violations he witnessed while following him.
 {¶ 7} The videotape from the dashboard video camera was admitted as an exhibit. It is unclear from the videotape whether the vehicle ever completely crossed the yellow line or merely drove upon it.
 {¶ 8} Following the hearing, the municipal court issued a judgment entry granting Korman's motion to suppress. The court determined that Officer Mescall's traffic stop was improper and, therefore, any evidence resulting from the stop was suppressed. The court stated that Officer Mescall "may have concluded that [Korman] was impaired. However, the ability of [Korman] to negotiate the subsequent hill and curves correctly should forstay any notion of impairment and the initial stop was invalid."
 {¶ 9} From this judgment, the state filed a timely notice of appeal and now sets forth the following assignment of error for our consideration:
 {¶ 10} "The trial court erred to the prejudice of the state and village in granting the motion to suppress filed by the defendant-appellee."
 {¶ 11} Under its sole assignment of error, the state argues that the municipal court erred in granting appellee's motion to suppress. The focus of the state's argument is that the trial court failed to conduct a probable cause analysis.
 {¶ 12} "Appellate review of a motion to suppress presents a mixed question of law and fact."[1] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[2] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[3]
 {¶ 13} Regarding "weaving" and marked lane violations, there are two legitimate bases for an officer to initiate a traffic stop. The first is that, pursuant to Terry v. Ohio, the officer has reasonable suspicion that a crime is occurring.[4] The second is that the officer has probable cause to believe that a traffic violation has occurred.[5] In many instances when a vehicle crosses the centerline, the officer could stop the vehicle based on probable cause that a traffic violation has occurred (a marked lane violation or crossing a double-yellow line); and based on reasonable suspicion that the driver is operating the vehicle under the influence of alcohol. However, the stop does not violate the Fourth Amendment so long as the circumstances meet one of the above standards.
 {¶ 14} "The investigative stop exception to theFourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent."[6] This standard applies to individuals driving motor vehicles.[7] Finally, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."[8] These circumstances are to be "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."[9]
 {¶ 15} Sufficiently "erratic" driving is justification to support a Terry stop based on the officer's reasonable suspicion that the driver is operating the vehicle under the influence of alcohol.[10] Significant weaving within one's lane can rise to the level of erratic driving and reasonable suspicion that the driver of the vehicle is impaired to justify a stop, even if there are no other traffic violations.[11] On the other hand, a "de minimis" marked lane violation, standing alone, does not necessarily rise to the level of reasonable suspicion that the operator of the vehicle is impaired.[12]
 {¶ 16} The trial court thoroughly conducted a reasonable suspicion analysis. The trial court concluded that Officer Mescall did not have reasonable suspicion to initiate a Terry
stop on the basis that Korman was operating his vehicle under the influence of alcohol. The trial court's findings are supported by the record and the applicable law.
 {¶ 17} However, a traffic violation, standing alone, constitutes probable cause for an officer to stop a vehicle to investigate the violation itself. The Supreme Court of Ohio has held:
 {¶ 18} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under theFourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity."[13]
 {¶ 19} The trial court failed to conduct a probable cause analysis, pursuant to Dayton v. Erickson. On a motion to suppress, an appellate court must accept the factual findings made by the trial court.[14] In this matter, the problem is that the trial court did not make sufficient factual findings regarding the probable cause analysis. Further, the evidence in the record is inconsistent. There is a videotape from the officer's patrol car. This videotape is made at night, from a moving vehicle, and it may or may not depict Korman violating the law. For appellate purposes, without the trial court making any factual findings, it is best deemed "inconclusive." Aside from the videotape, you have the testimony of the witnesses. The testimony from Korman's wife suggests Korman operated the vehicle in a safe manner. On the other hand, Officer Mescall testified that Korman's vehicle crossed the double-yellow line and the white edge line.
 {¶ 20} The evidence in this case is the witnesses' various versions of the events in question and the inconclusive videotape evidence. The trial court is in the best position to weigh this evidence and resolve factual matters.[15] Therefore, this case is remanded to the trial court, for the court to determine if Officer Mescall had probable cause to believe that Korman violated a statute or ordinance. Specifically, the trial court should make findings as to whether Officer Mescall had probable cause that Korman violated R.C. 4511.25, 4511.31, or 4511.33.
 {¶ 21} The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.
Grendell, J., concurs in judgment only with Concurring Opinion, O'Toole, J., dissents with Dissenting Opinion.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[2] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[3] Id., citing State v. McNamara (1997),124 Ohio App.3d 706.
[4] Terry v. Ohio (1968), 392 U.S. 1, 21.
[5] Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus.
[6] State v. Gedeon (1992), 81 Ohio App.3d 617, 618, citingTerry v. Ohio, supra.
[7] Id., citing State v. Heinrichs (1988),46 Ohio App.3d 63.
[8] State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
[9] State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
[10] Mentor v. Phillips (Dec. 29, 2000), 11th Dist. No. 99-L-119, 2000 Ohio App. LEXIS 6207, at *6, quoting State v.Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649.
[11] See State v. Weber, 11th Dist. No. 2003-L-090,2004-Ohio-2444, at ¶ 15.
[12] See, e.g., State v. Haley, (Mar. 16, 2001), 11th Dist. No. 2000-P-0021, 2001 Ohio App. LEXIS 1242, at *4-5.
[13] Dayton v. Erickson, 76 Ohio St.3d 3, syllabus. See, also, e.g., Whren v. United States (1996), 517 U.S. 806,812-813.
[14] State v. Burnside, supra, at ¶ 8, citing State v.Fanning, supra.
[15] See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.