{¶ 36} I concur with the judgment and opinion of the court, but I write separately to articulate a Fourth Amendment analysis of the perilous intersection of consent searches and police drug interdiction during automobile stops. I note at the outset the courageous and valiant efforts of our police officers in combating the war on illegal drugs, and that the techniques used during drug interdiction traffic stops have been upheld by the courts when an articulable and reasonable suspicion of criminal activity is present. However, we have witnessed a retreat from the Weeks and Mapp[20] line of cases addressing Fourth Amendment protections against unreasonable searches and seizures, especially in automobile search and seizures cases. Thus, it is imperative, now more than ever, when the Bill of Rights is viewed by some as a "technicality" that can be ignored for expediency's sake, that this type of police investigation operate within the bounds outlined by our constitution. *Page 11 
 {¶ 37} As Ohio born Justice William Day wrote, "The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land."Weeks at 393.
 {¶ 38} I begin my analysis with the well recognized rule that a police stop of a motor vehicle is a significant intrusion that requires justification as a "seizure" within the meaning of the Fourth andFourteenth Amendments of the United States and Ohio Constitutions.State v. Retherford (1994), 93 Ohio App.3d 586, 598. See State v.Heinrichs (1988), 46 Ohio App.3d 63, 65, citing Delaware v. Prouse
(1979), 440 U.S. 648, 653. It is undisputed that in the case at bar, the initial stop of Henderson's automobile was justified by the fact that his vehicle had expired license tags. Thus, Henderson was legally "seized" under both the Fourth Amendment and the Ohio Constitution the moment he was pulled over. However, once the officer issued the citation and told Henderson he was "all set," the probable cause that justified the stop was dispelled.
 {¶ 39} It cannot be seriously argued that Henderson, who was standing on the side of an interstate, next to an officer, would have felt free to go when the officer gave him his citation, yet continued to question him. As the Supreme Court remarked in Delaware v. Prouse, pulling over a vehicle onto the side of the road may involve "an unsettling show of authority which interferes with the freedom of movement, is inconvenient, takes up the individual's time, and may create substantial anxiety." Prouse at 657. *Page 12 
 {¶ 40} In State v. Vanderhoff (1995), 106 Ohio App.3d 21, 25, we recognized that once the officer had dispelled his suspicions of outstanding warrants that, at that point, the appellant should have been free to leave. However, the officer did not do so, and instead ordered the appellant out of the car. We remarked: "[a]ppellant was not free to leave at this point in time, and the detention of appellant became custodial in nature, even though the officers did not have any basis upon which the restraint of appellant could be justified or which a search of the vehicle could be undertaken." Id. at 25. Thus, as inVanderhoff, once the officer had given Henderson his traffic citation and told him he was "all set," his continued detention and further questioning became unlawful unless the stop otherwise gave rise to a reasonable suspicion of some other illegal activity, different from the original stop.
 {¶ 41} The question that follows, then, is whether the officer had a different new, articulable, and reasonable suspicion to prolong the detention or whether the officer was simply engaged in a "fishing expedition." After questioning Henderson about a temporary protection order that was issued against him, his past convictions, and his drug history; questions to which Henderson truthfully replied; the officer asked if he had anything "like that" on him. When Henderson responded in the negative, the officer then asked if he could search Henderson's vehicle for "any items like that," to which, of course, Henderson consented. At this point, the officer did not have any new indicia of illegal drug activity. The officer did not base his continued detention upon an odor of drugs, an alert by a drug dog of the presence of drugs, or even "nervousness" or odd behavior of the suspect. Based on Henderson's prior convictions and drug history, combined with the type of car and Henderson's personal style, the officer had a hunch *Page 13 
that criminal activity may be afoot. This was clearly not enough to justify the continued detention.
 {¶ 42} In State v. Chatton (1984), 11 Ohio St.3d 59, 61, the Ohio Supreme Court noted that "the detention of an individual by a law enforcement officer must, at the very least, be justified by `specific and articulable facts' indicating that the detention was reasonable." (Citations omitted). Further, "[a]n inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law." State v. Carter, 11th Dist. No. 2003-P-0007, 2004-Ohio-1181, at ¶ 35, citing State v. Dickinson (Mar. 12, 1993), 11th Dist. No. 92-L-086, 1993 Ohio App. LEXIS 1428, at 4. Thus, the continued detention of Henderson after the issuance of the citation was clearly unlawful since the officer did not have a new reasonable suspicion to justify his further questioning and subsequent search.
 {¶ 43} Having determined the prolonged detention was unlawful, we must next decide whether Henderson's "consent" to search the car cleansed the illegal police conduct. The only logical conclusion is that it did not. "Consent given while unlawfully detained, even if voluntary, renders the resulting evidence inadmissible unless the consent is an `independent act of free will.'" Carter at ¶ 36, citing Florida v. Royer (1983),460 U.S. 491, 501-502.
 {¶ 44} After Vanderhoff, we were presented with a similar case,State v. Lyons (2000), 11th Dist. No. 99-L-067, 2000 Ohio App. LEXIS 2532, where we reviewed the "voluntariness" of consent. We stated: "the general rule is that a warrant supported by probable cause is needed in order for a search to occur. However, a warrantless *Page 14 
search may be conducted if an exception to the warrant requirement exists." Id. at 8, citing Schneckloth v. Bustamonte (1973),412 U.S. 218, 219. "For example a warrantless search does not violate the Fourth
or Fourteenth Amendments if it is performed with the voluntary consent of the person whose privacy rights are at issue." Id. "Additionally voluntariness is a question of fact to be determined by considering the totality of the circumstances." Id. at 9, citing Schneckloth, at 248-249. "Furthermore, consent must be shown to have been freely and voluntarily given by `clear and positive' evidence, and the burden is on the state to demonstrate such consent." Id. citing State v. Posey
(1988), 40 Ohio St. 3d 420, 427, citing Bumper v. North Carolina (1968),391 U.S. 543, 548. "That burden is not satisfied by showing a mere submission to a claim of lawful authority." Id. citing Royer at 497.
 {¶ 45} In this case, as in Lyons, the state has failed to carry their burden of proving clearly and convincingly that the appellant freely and voluntarily consented to the search of his vehicle. Id. at 11. "* * * [T]he causal conversation, the general questions, or the request for consent cannot be used to impermissibly broaden the investigative scope of the initial detention in the absence of a reasonable or articulable suspicion that further criminal activity is afoot." Retherford
at 600-601.
 {¶ 46} "When consent is obtained after illegal police activity, such as an illegal detention, search, or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search." Id. at 602, citing Royer at 501. Thus, our inquiry next focuses on whether the consent became voluntary due to an attenuated break from the illegal detention. Consent "will be held voluntary only if there is proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior *Page 15 
illegal action." Id. Furthermore, "[f]actors to consider in determining whether the consent is sufficiently removed from the taint of the illegal [seizure] include the length of time between the illegal seizure and the subsequent search, the presence of intervening circumstances, and the purpose and flagrancy of the misconduct." Id. at 601, citingUnited States v. Richardson (C.A. 6, 1991), 949 F.2d 851, 858. See, also, Brown v. Illinois (1975), 422 U.S. 590, 603-604.
 {¶ 47} In this case, Henderson consented to a search during the course of an illegal detention. There were only a few moments between the illegal seizure and the subsequent search. There were no intervening circumstances that served to attenuate the link, nor were there any suspicions further raised by Henderson's truthful answers to the officer's questions. Consequently, "a valid consent cannot be given following an illegal detention to which it is strongly connected, and that evidence uncovered as a result of such a search must be suppressed as fruit of the poisonous tree." Retherford at 603.
 {¶ 48} Thus, I find that after reviewing the totality of the circumstances, the only conclusion that can be drawn is that Henderson did not voluntarily consent to the search of his automobile, but was merely submitting to a claim of lawful authority while being unlawfully detained.
[20] Weeks v. United States (1914), 232 U.S. 383 and Mapp v. Ohio
(1961), 367 U.S. 643. *Page 1