[Cite as *Lakewood v. Shelton*, 2011-Ohio-4408.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95746**

## CITY OF LAKEWOOD

PLAINTIFF-APPELLEE

vs.

## RICHARD W. SHELTON, III

DEFENDANT-APPELLANT

**JUDGMENT:**
**REVERSED**

Criminal Appeal from the
Lakewood Municipal Court
Case No. 2010 TRC 00543

**BEFORE:** Jones, P.J., Rocco, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   September 1, 2011

ATTORNEY FOR APPELLANT

Richard J. Perez
Rosplock & Perez
4230 State Route 306
Suite 240
Willoughby, Ohio 44094


ATTORNEYS FOR APPELLEE

Richard A. Neff
City of Lakewood Chief Prosecutor

BY: Pamela L. Roessner
Assistant Prosecutor
City of Lakewood
12650 Detroit Avenue
Lakewood, Ohio 44107

LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Richard Shelton, III ("Shelton"), appeals the trial court's

denial of his motion to suppress.   Finding merit to the appeal, we reverse.

{¶ 2} In 2010, Shelton was charged in Lakewood Municipal Court with operating a vehicle under the influence ("OVI") and failure to wear his seatbelt.   He filed a motion to suppress, which was denied after a full hearing.   The following pertinent evidence was presented at the suppression hearing.

{¶ 3} On January 29, 2010, Officer William Comerford ("Comerford") of the Lakewood Police Department was traveling in his zone car on Waterbury Road.   The officer observed a 2003 gray Mitsubishi Eclipse, driven by Shelton, traveling down the middle of the street.   The street did not have lane markings.   The officer began to follow the car but testified he could not clearly read the license plate because snow covered the plate.   Shelton turned from Waterbury Road onto Athens Avenue, another unmarked street.   Shelton traveled a short distance down Athens Avenue before turning onto Clarence Avenue.   At that point, Comerford activated his overhead lights and effectuated a traffic stop.

{¶ 4} Comerford testified that he stopped the car because he could not read the license plate from his vehicle and because the car had been traveling in the middle of the street. Comerford stated that he was able to read the plate once he walked up to the car.   The officer could not recall if he brushed snow off the plate or if the snow just fell off.   The officer also could not recall if he could see any of the letters or numbers on the license plate before

approaching the vehicle.

{¶ 5} No testimony was taken as to what happened after Comerford approached the vehicle, but the record indicates that Shelton refused a breathalyzer test and was arrested for OVI.

{¶ 6} The trial court denied the motion to suppress, reasoning that the officer had reasonable basis for stopping the car because the license plate was obstructed. The trial court further stated that Shelton's driving in the middle of the road was not a sufficient basis for the stop because there was snow piled on the sides of the unmarked street.

{¶ 7} Shelton pleaded no contest to the OVI and seatbelt violation and the trial court sentenced Shelton to 30 days in jail, imposed one-year of community control sanctions, fined him $600, and suspended his drivers license for two years. The trial court stayed Shelton's sentence pending appeal.

{¶ 8} Shelton now appeals, raising one assignment of error for our review:

{¶ 9} "I. The trial court abused its discretion when it denied appellant's motion to suppress evidence."

{¶ 10} In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8, the Ohio Supreme Court explained the standard of review for a motion to suppress as follows:

{¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and

fact.   When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.   *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972.   Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.   *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.   *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539."

{¶ 12} Shelton argues that the police officer did not have reasonable suspicion to initiate a traffic stop and detain him for an OVI investigation when the sole basis for the stop was that his license plate was obstructed by snow, but the snow fell off the plate making it unobstructed before the officer initiated contact with him.   For the reasons that follow, we agree.

{¶ 13} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.   *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.   An investigative stop, or "*Terry* stop," is a common exception to the Fourth Amendment warrant requirement.   See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.   A law enforcement officer

may properly stop an individual under the *Terry*-stop exception if the officer possesses the requisite reasonable suspicion based on specific and articulable facts that the person is, was, or is about to be engaged in criminal activity. *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660; *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618, 611 N.E.2d 972; *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304; *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 721. Whether reasonable grounds for a stop exist must be viewed in light of the totality of the circumstances. *London v. Edley* (1991), 75 Ohio App.3d 30, 32, 598 N.E.2d 851. That being said, at a hearing on a motion to suppress, the state bears the burden of establishing the validity of a traffic stop. See *State v. Foster*, Lake App. No. 2003-L-039, 2004-Ohio-1438, ¶6. Likewise, once a warrantless search is established, it is the state's burden to show the validity of the search. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889.

{¶ 14} "Reasonable suspicion" entails some minimal level of objective justification for making a stop; this is something more than an inchoate and unparticularized suspicion or "hunch," but something less than the level of suspicion required for probable cause. *Terry* at 21. The existence of reasonable suspicion is based upon an objective and particularized suspicion that criminal activity was afoot and must be based on a totality of the surrounding circumstances. *State v. Abdulrahman*, Cuyahoga App. No. 95159, 2011-Ohio-1931, ¶31,

citing *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.

{¶ 15} Comerford testified that he stopped Shelton's car, in part, because his license plate was obscured. R.C. 4503.21(A) provides that "[n]o person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker issued * * *. All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility." A violation of the statute is a minor misdemeanor. R.C. 4503.21(B). The intent of the statute is to "require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *State v. Durfee* (Mar. 6, 1998), Lake App. Nos. 96-L-198 and 96-L-199, at *8.

{¶ 16} In arguing that the trial court abused its discretion in denying his motion, Shelton relies on the Ohio Supreme Court's holding in *State v. Chatton* (1984), 11 Ohio St.3d 59, 463 N.E.2d 1237. In *Chatton*, the officer stopped the defendant because no license plates were visible on his vehicle. After approaching the car on foot, the officer saw a temporary plate lying on the rear deck under the rear window. Consequently, the Court held the officer lacked reasonable suspicion of any legal violation once he determined that a temporary plate

existed.[1]

{¶ 17} In *Chatton*, the Court held "where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable." Id. at 63. The *Chatton* court opined that "because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to [a] random detention[.]" Id. The Court concluded that "[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." Id.

{¶ 18} Shelton also relies on this court's holding in *State v. Lopez*, Cuyahoga App. No. 93197, 2010-Ohio-2462, in which this court found that a motion to suppress should have been granted because the police did not have reasonable suspicion to detain the defendant whose car

[1]At the time *Chatton* was decided, R.C. 4503.21 did not require temporary plates to be displayed in any particular way or even to be "visibly displayed at all." Since *Chatton*, the General Assembly has amended R.C. 4503.21 to require a temporary plate to be displayed in plain view from the rear of a vehicle and to have its visibility unobstructed.

displayed a temporary tag which, except for the angle of the rear window or the glare of the lights, was entirely readable from left to right. In finding that the trial court erred in denying the motion to suppress, this court found that once the officer observed the defendant's validly displayed temporary tag, he had no further reasonable suspicion to detain him for questioning.

{¶ 19} In contrast, the city relies on *State v. Phillips*, Montgomery App. No. 22918, 2009-Ohio-3519, in which the defendant argued that the officer lacked reasonable, articulable suspicion to justify stopping and detaining him and was required to let him go immediately upon approaching his car and seeing the license plate number. The defendant claimed that once the officer was able to read the license plate, there was no legitimate basis for continuing the stop. The court disagreed, finding that because the defendant's temporary plate was obstructed by a tinted cover, dirt, and road salt, the officer continued to have reasonable suspicion of a statutory violation after he approached the defendant's car and was allowed to question the defendant. Id. at ¶12.

{¶ 20} We find this case to be similar to *Lopez* and distinguishable from *Phillips*. Once Comerford got out of his zone car and approached Shelton's car, he could read the license plate. And although he testified that he also pulled Shelton over because he had been driving in the middle of the street, we agree with the trial court's assessment that Shelton's driving in the middle of an unmarked street during winter with snow piled on the sides of the

street did not give the officer reasonable suspicion of any criminal activity.

{¶ 21} We are further troubled by the officer's testimony that he could not remember whether he brushed the snow off or the snow fell off itself. Because the city bears the burden of showing that the stop and seizure are justified, the officer's inability to remember such an important fact weighs heavily towards suppression. Moreover, the city failed to submit any evidence regarding Shelton's detention and the officer's subsequent OVI investigation. Again, it is the city's burden to set forth evidence that a warrantless search and seizure is justified; the city has failed to do so in this case.[2]

{¶ 22} Although Comerford testified that he could not read the entire license plate when he pulled Shelton over, he was able to read the plate once he got out of his zone car and started to approach Shelton's car. Once he could read the license plate, he no longer had any reason to detain Shelton for an OVI investigation and should have sent him on his way. In accord with *Chatton*, Comerford, as a matter of courtesy, could have explained to Shelton the reason he was initially detained, but he could not "unite the search to this detention," and on this record Shelton should have been free to continue on his way without any further detention

---

[2] Our finding in this case may have been different if, by way of example, Officer Comerford had approached the car as a courtesy to tell Shelton he was free to go and immediately noticed Shelton was intoxicated. Under those circumstances, we would be hesitant to say that the officer was required to release Shelton without further investigation. Since the city chose not to submit any evidence of the detention, however, we are not aware of *any* of the circumstances of the detention and will not presume anything not entered into evidence during the suppression hearing.

or investigation.

{¶ 23} Therefore, we find that the trial court erred in denying Shelton's motion to suppress.

{¶ 24} The sole assignment of error is sustained.

Accordingly, judgment is reversed and the case is remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lakewood Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
KATHLEEN ANN KEOUGH, J., CONCUR